UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

DAMIEN A. SUBLETT                                                                                 PLAINTIFF

v.                                                    CIVIL ACTION NO. 5:16CV-P184-TBR

GEORGE HENSON *et al.*                                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Damien A. Sublett, an inmate now housed at the Western Kentucky Correctional Complex (WKCC), filed the instant *pro se* 42 U.S.C. § 1983 action concerning his previous incarceration at the Kentucky State Penitentiary (KSP) (DN 1). Plaintiff also filed a motion to supplement the complaint (DN 6), which the Court granted by separate Memorandum and Order. The complaint and supplemental complaint are now before the Court for initial screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons stated below, the Court will allow some claims to continue and dismiss other claims.

The original complaint names the following Defendants: George Henson, identified as a correctional officer at KSP; the Kentucky Department of Corrections[1] (KDOC); and KSP. Plaintiff sues Defendant Henson in his individual capacity only. The supplemental complaint lists the following Defendants: Bruce Vondwingelo, a unit administrator at KSP; Randy White, the KSP Warden; Skyler Grief, a deputy warden at KSP; Dan Smith, a program director at KSP; Tim Lan, a deputy warden at KSP; Steve Ford, a deputy warden at KSP; Jeffery Hope, a captain at KSP; Gibbs, a captain at KSP; and Surge Martin, a captain at KSP. Plaintiff sues each Defendant named in the supplemental complaint in his or her individual and official capacities.

---

[1] Plaintiff actually names the "Kentucky Department of Correction" as a Defendant. The Court takes judicial notice that the correct name of this entity is the "Kentucky Department of Corrections."

In the original complaint, Plaintiff describes an incident which occurred in December 2015 while he was housed in a special management unit. He claims that a female nurse, Kaci Simmons, watched Plaintiff dry himself in the nude after exiting the shower. He states that the nurse's actions violated KDOC policy and his constitutional rights, and he reports that the incident is the subject of another action in this Court. *See Sublett v. Sheets et al.* Civil Action No. 5:15CV-199-TBR.

Plaintiff states that on February 2, 2016,[2] he mailed a copy of a "Memorandum" to Defendant Henson, whom he states is an "official in Seven Cell House security," stating that he filed suit against Simmons. He reports that on February 7, 2016, Defendant Henson was escorting another nurse while conducting pill call and asked Sublett to take his medications. Plaintiff states that the following occurred:

> Sublett informed c/o Henson that he was not going to take any medication that morning. C/O Henson, then stated, "Get up and take your medication. This nurse out here now is not the Nurse Simmons who you filed a law suit on." Sublett, then informed c/o Henson that he was not going to take any medication, and that he has a right to file a lawsuit against Nurse Kaci Simmons. C/O Henson then stated, he c/o Henson has the right to write disciplinary Report on Sublett.
>
> On February 7th, 2016, c/o Henson filed a false Disciplinary Report against Sublett for Disrespectful Language.

Plaintiff reports that Defendant Henson "stated that Sublett 'became loud and disrespectful stating shut my F—king tray slot and Do your F—king job as security and stop trying to be Medical.[']" Plaintiff further states that the Adjustment Committee found him guilty of using disrespectful language on February 10, 2016. He describes the Adjustment Committee's findings as follows:

---

[2] Plaintiff states that this date is February 2, 2015. However, based on the events described in the complaint, it is clear that the actual date was in 2016.

1). Sublett said he didn't want his meds and it was a false statement.
2). Nurse K. Smith said she remembers Sublett getting fussy. But did not Hear Sublett use disrespectful language.
3). Robert Penleton stated Sublett was not being disrespectful.
4). Brandon Cox stated Sublett was only telling staff he didn't want his Meds.

The Committee conclude:
Committee find the staff reports credible and accepts these report's.

Sublett was issued a penalty of 15 days good time loss, then after on appeal the Warden at KSP amended the penalty from 15 days GTL to 15 ds.

As relief, Plaintiff demands compensatory and punitive damages and injunctive relief in the form of stopping the enforcement of a policy concerning observation of inmates in the special management unit showers and requiring KSP "to place privacy screens in SMU showers."

In the supplemental complaint, Plaintiff describes a separate incident. He claims that his cell door was closed on his arm on December 31, 2016. He states that after his arm was released he informed another officer that he was injured and he was told to go to medical. He states, "I looked inside of the control cabe and c/o Weber the control officer was starring at me first with a scowl than she began to mock me laughing holding her arm." He reports that a nurse examined his arm and "found minor swelling and directed me to put ice on my arm and I was proscribed Ibprofen for pain."

Plaintiff states that he then spoke to Sgt. Charles D. Crick who "inquired as to what I won't done about this incident I then informed Crick that I was going to file a grievance on c/o Webber because she shut my arm in my cell door on purpose to hurt me." He further states, "C/o Crick then stated I would not be filing any grievance because he would be issueing me a disciplinary report which would stop my grievance, c/o Crick further informed me that it is a administrative extended holiday so my grievance won't reach the Administration until after the

holidays." Plaintiff reports that he filed a grievance against Webber on December 31, 2016, for shutting his right arm in his cell door. He alleges that it was rejected on January 9, 2017, on the basis that the grievance was non-grievable and that he should seek redress through the Adjustment Committee. Plaintiff maintains that on December 31, 2016, Crick issued a false disciplinary report against him for "Lying to an employee with regards to the incident on 12-31-16 with c/o Webber. Sgt. Crick stated upon review of camera footage inmate Sublett did not get his arm shut in his cell door . . . ." Plaintiff states that on January 30, 2017, he went before the Adjustment Committee and that another corrections officer stated in the hearing that he observed Plaintiff's arm get caught in the cell door and that Webber had mocked Plaintiff. Plaintiff represents that the Adjustment Committee chairman reviewed the camera footage and concluded that Plaintiff did in fact have his arm closed in the cell door; the Committee found that Plaintiff had not lied to staff and dismissed the disciplinary report.

Plaintiff further states that on January 27, 2017, Webber told him that she would not conduct a pat down search on him "because I'll file a PREA or lawsuit like I did on Ms. Sheets. I then told c/o Webber it had nothing to do with her. C/o Webber, told me she wish she had broken my arm, that way you can't do any writing and file any sad grievance's."

Plaintiff states, "This is a first Amendment retaliation claim against Crick for issueing a fals disciplinary report for Sublett filing a grievance on c/o Webber." Plaintiff also alleges, "The Next first Amendment Retaliation Claim is against c/o Webber, purposely shut Sublett right arm in his cell door for filing PREA complaints and lawsuits against c/o Marlene Sheets an employee at KSP with pending litigation in federal court."

Also in the supplemental complaint, Plaintiff alleges a separate incident under the heading "Failure-To-Protec Claim." He states, "On 1-1-17 I was forced to shower with inmates

4

who have a document history of rapeing inmate in KSP showerhouse." He maintains that he filed a grievance on January 3, 2017, stating that "inmate who are documented registered sexual serial rapist and inmate whom have been charged and convicted of rape in KSP shower house via substantiated PRE's and inmate whom have received disciplinary report for inappropriate sexual behavior with other inmate pose a risk to Sublett being sexually assaulted . . . ." He states that the shower house "requires inmate to literaly shower no more than five inches from one another when there are over 20 to so inmates in the shower house and you have two inmate to own shower spout." He states that on January 27, 2017, he was showering in the shower house and saw two inmates having sexual intercourse and that "one of those inmate informed me to get up front of the shower house or get fu***d." He reports that he filed a grievance concerning the incident the same day.

Plaintiff further states that on February 3, 2017, he was again showering in the shower house. He states, "As I was showering I had soap on my face so I could not see when I felt some one smack me on my buttox slightly taking their hand between my buttox." He states that he "was unable to see who just assaulted me."

Plaintiff reports that he sent Warden Randy White a letter with his concerns about the "sexual rapes that occurred in KSP shower house and that White sent Sergeant Mitchell to speak with him." He states that he informed Mitchell, as well as Bruce Vondwingelo, that he would be sexually assaulted should he continue to shower in the shower house. Plaintiff cites to "Correctional Policy and Procedure 14.7 which is established pursuant to 42 USCS 15601 Prison Rape Elimination Act (PRE); PRE, C.P.P. 14.7 (F) Offender Risk Assessment." He represents that the policy requires a facility to take certain measures, including that inmates should be "assessed during intake screening within 72 hours of arrival at the Assessment and Classification

Center and upon each transfer to a facility"; that each prisoner should be screened for a "history of sexual abuse – victimization or sexually predatory behavior"; and that inmates who have experienced victimization or previously been a perpetrator should be given counseling and monitoring.

Plaintiff states that he filed a "PRE Report in 2013 at Little Sandy Correctional Complex where I was raped in a dorm shower this is documented within my institutional file." Plaintiff also maintains that "a White Supremicist group forcefully extract sexual favor from Sublett in order for Sublett to come out for recreation in (Seg) 3 cellhous."

**II.**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 604.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district

court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

### *Claims against KDOC, KSP, and all Defendants in their official capacities*

To state a § 1983 claim, a plaintiff must allege that a "person" acting under color of state law deprived the plaintiff of a right secured by the Constitution or federal law. *See* 42 U.S.C. § 1983. A state and its agencies sued for monetary damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The KDOC and KSP are both agencies or entities of the Commonwealth of Kentucky. *See* Ky. Rev. Stat. § 15A.020. Neither is therefore a "person"

under § 1983, and Plaintiff fails to state a cognizable claim against them. Plaintiff also sues each Defendant named in the supplemental complaint in his or her official capacity. Claims against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Since the state is not a "person" subject to suit under § 1983, the claims against Defendants in their official capacities also fail to state a cognizable claim.

Additionally, the Eleventh Amendment[3] acts as a bar to all claims for relief against these Defendants. A state, its agencies, and state employees sued in their official capacities may not be sued in federal court, regardless of the relief sought, unless the state has waived its sovereign immunity under the Eleventh Amendment or Congress has overridden it. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Therefore, the KDOC, KSP, and all Defendants sued in their official capacities are immune from claims seeking monetary damages.

With regard to any of Plaintiff's claims for injunctive relief, since filing this action, Plaintiff was transferred out of KSP to WKCC. An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot upon the inmate's release from confinement or transfer to another facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred). Because Plaintiff has been transferred out of KSP, his claims for injunctive relief concerning his incarceration at KSP are moot and must be dismissed.

---

[3] The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Therefore, all claims against the KDOC, KSP, and Defendants in their official capacities will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from a defendant who is immune from such relief.

### *Retaliation claims*

Upon review, the Court will allow Plaintiff's First Amendment retaliation claim to proceed for further development against Defendant Henson in his individual capacity.

Plaintiff also alleges First Amendment retaliation claims against Crick and Webber. However, he did not list them as Defendants in his supplemental complaint. Construing the supplemental complaint broadly, as the Court is required to do at this stage, the Court will allow claims of retaliation to proceed for further development against Crick and Webber in their individual capacities.

### *Claims regarding shower house conditions*

With regard to Plaintiff's claims concerning the KSP shower house, he claims that the conditions violated prison policies and the Prison Rape Elimination Act (PREA). However, failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim. *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation."); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (rejecting inmate's argument that prison failed to follow Michigan prison regulations in putting him in segregation). Moreover, the PREA does not create a private cause of action which can be brought by an individual plaintiff. *See Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 U.S. Dist. LEXIS 114727, at *5-6 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA

creates no private right of action."). Therefore, Plaintiff's claims for violations of prison policies and the PREA will be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff also alleges failure to protect. Plaintiff appears to be asserting failure-to-protect claims against Defendants Vondwingelo, White, Grief, Smith, Lan, Ford, Hope, Gibbs, and Martin. However, with regard to the involvement of Defendants, Plaintiff states that he sent Defendant White a letter with his concerns about the "sexual rapes that occurred in KSP shower house and that White sent Sergeant Mitchell to speak with him." He states that he informed Mitchell, as well as Defendant Vondwingelo, that he would be sexually assaulted should he continue to shower in the shower house. It is unclear from the supplemental complaint whether these communications occurred before or after the alleged sexual contact. However, construing the complaint broadly, the Court will allow failure-to-protect claims to proceed against Defendants White and Vondwingelo in their individual capacities.[4]

With regard to the other Defendants listed in the supplemental complaint, he states that he informed Defendants Grief, Lan, Ford, Martin, Hope, Smith, and Gibbs of his concerns regarding showering through filing a grievance concerning the shower house. However, to state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which he complains. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976). A plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional

---

[4] Since Plaintiff does not list Mitchell as a Defendant in the supplemental complaint but lists a number of other Defendants in connection with this claim, the Court concludes that Plaintiff did not intend to name Mitchell as a Defendant.

dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his or her grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation.").

Therefore, Plaintiff's claims against Defendants Grief, Lan, Ford, Martin, Hope, Smith, and Gibbs must be dismissed for failure to state a claim upon which relief may be granted.

## IV.

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's claims against the KDOC, KSP, and the official-capacity claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking monetary relief from a defendant who is immune from such relief.

**IT IS FURTHER ORDERED** that the claims against Defendants Grief, Lan, Ford, Martin, Hope, Smith, and Gibbs are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court is DIRECTED** to terminate Defendants KDOC, KSP, Grief, Lan, Ford, Martin, Hope, Smith, and Gibbs as parties to the action.

As the Court has allowed claims to proceed against Charles D. Crick and Webber, the **Clerk of Court is DIRECTED** to add these individuals as Defendants in the docket sheet.

The Court will enter a separate Order Directing Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date:

cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.010