UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00184-TBR

DAMIEN A. SUBLETT, PLAINTIFF

v.

HENSON, *et. al.*, DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Damien A. Sublett, proceeding *pro se* and *in forma pauperis*, brings this 42 U.S.C. § 1983 action against Defendants George Henson, Bruce VonDwingelo, Randy White, Charles Crick, Michele Webber and Seth Mitchell, alleging First Amendment retaliation and Eighth Amendment failure-to-protect claims arising from events that took place during his incarceration at Kentucky State Penitentiary.[1] There are currently several motions pending before the Court, seven from Sublett, [DN 42; DN 46; DN 47; DN 49; DN 53; DN 65; DN 66], and one from Defendants, [DN 44.] The Court will address each motion in the following Memorandum Opinion and Order.

BACKGROUND

In his complaint and supplemental complaint, Sublett brings First Amendment retaliation and Eighth Amendment failure-to-protect claims arising out of three separate incidents. First, Sublett asserts that he was retaliated against for filing a lawsuit against a nurse, Kaci Simmons, in which he alleged that Nurse Simmons inappropriately watched Sublett dry himself off after showering in December 2015. [*See* DN 1 (Complaint).] According to Sublett, on February 2, 2015, he mailed Defendant George Henson, a correctional officer, a memorandum notifying him of his lawsuit against Simmons. [*Id.* at 6.] On the morning of February 7, 2016, Henson was

---

[1] Though Sublett is no longer housed at KSP, [*see* DN 64], he was housed there during the events relevant to this action.

1

escorting a different nurse, Nurse Smith, along the walk of Seven Cell House A to distribute medicine to inmates. [*Id.*] Sublett refused to take his medication that morning, and alleges that, in response, Henson stated "Get up and take your medication. This nurse out here now is not the Nurse Simmons who you filed the lawsuit on." [*Id.*] Sublett continued to refuse to take his medication. [*Id.*]

After this incident, Henson filed a disciplinary report on Sublett for using disrespectful language. [*Id.*] According to Henson's report, Sublett stated "Those aren't my meds," and when Henson said "hold on while I check," then "Sublett became loud and disrespectful stating 'Shut my fucking tray slot.' Inmate Sublett also said 'Do your fucking job as security and stop trying to be medical." [DN 44-6 at 1 (Disciplinary Report Form).] The Adjustment Committee found Sublett guilty on February 10, 2016 and was issued a penalty of fifteen days of good time loss. [DN 1-3 at 26 (Hearing and Appeal Form).] Sublett contends, however, that Henson's allegations were false and meant to retaliate against Sublett for filing a lawsuit against Nurse Simmons.

For Sublett's second retaliation claim, he alleges a separate incident in his supplemental complaint. [*See* DN 6-1 (Supplemental Complaint).] Therein, Sublett alleges that on December 21, 2016, he was injured by his cell door, which is electronically operated. [*Id.* at 1.] According to Sublett, while attempting to exit his cell with the cell door open, he got about halfway through the door when it quickly closed, trapping him in the door. [*Id.*] Sublett states that the door then opened again and he attempted to exit, but the door quickly closed on his right arm. [*Id.*] Sublett called for help and the walk officer, Officer Johnson, let him out. [*Id.*] Once Sublett exited his cell, he told Officer Brindle that he was injured, and she told him to "go to medical." [*Id.*] Sublett asserts that, on his way, c/o Michele Webber, the control officer, laughed and mocked him by holding her arm. [*Id.*] After leaving medical, where Sublett was told he had minor swelling and

2

given Ibuprofen, he was called into Sgt. Crick's office. [*Id.*] There, Sublett told Sgt. Crick that he planned to file a grievance against c/o Webber for intentionally closing the cell door on his arm. [*Id.*] Sublett contends that Sgt. Crick told him that he "would not be filing any grievance because he would be issuing [Sublett] a disciplinary report which would stop [his] grievance." [*Id.*] Sgt. Crick allegedly told Sublett that, due to the upcoming holidays, his grievance wouldn't reach the administration until after the holidays. [*Id.* at 1–2.]

Sublett alleges that, after the holidays, on December 31, 2016, he filed the grievance against c/o Webber for allegedly shutting the cell door on his arm. [*Id.* at 2.] In response, Sublett received a Grievance Rejection Notice informing him that the issue in his grievance was "non-grievable" and that it had to instead be addressed through the Adjustment Committee. [*Id.*] According to Sublett, he was also retaliated against for filing a grievance against c/o Webber because, on December 31, 2016, Sgt. Crick "issued Sublett a false disciplinary report charge" for "lying to an employee." [*Id.*] According to Sgt. Crick, "upon review of camera footage . . . Sublett did not get his arm shut in his cell door." [*Id.*] Sublett went before the Adjustment Committee on January 30, 2017 and, after calling c/o Johnson as a witness, who stated he observed Sublett get his arm caught, the disciplinary report was dismissed. [*Id.*]

Next, Sublett alleges that, on January 27, 2017, he was walking with another inmate, Kenderick Ellison, in the yard at KSP when c/o Webber stopped him and asked if he was still hurt. [*Id.*] Sublett alleges that c/o Webber patted Ellison down but stated that she would not pat Sublett down because he would file a PREA complaint or a lawsuit like he did against Ms. Sheets. [*Id.* at 2–3.] Sublett says he told c/o Webber that "it had nothing to do with her," and in response c/o Webber stated that she wished she had broken his arm in the cell door so that he couldn't file and more grievances. [*Id.* at 3.]

Finally, with regard to Sublett's failure to protect claim, he alleges that, on January 1, 2017, he "was forced to shower with inmates who have a document[ed] history of raping inmate[s] in KSP shower house." [DN 6-1 at 3.] Sublett states that he filed a grievance about this issue on January 3, 2017 informing several prison officials that inmates "who are documented registered sexual serial rapist[s] and inmate[s] who have been charged and convicted of rape in KSP shower house via substantial PRE's and inmates who have received disciplinary reports for inappropriate sexual behavior" all "pose a risk to Sublett being sexually assaulted because of the shower house required inmate[s] to literally shower no more than five inches from one another." [*Id.*] According to Sublett, he was again forced to shower in these conditions on January 27, 2017 and, as he was showering another "inmate informed [him] to get up front of the shower house or get fucked." [*Id.* at 4.] Sublett states that he filed a grievance with regard to this incident. [*Id.*]

Sublett alleges that he was again forced to shower under these conditions on February 3, 2017, and that while his face was covered with soap, an unknown inmate "smack[ed] [him] on [his] buttox [while] slightly taking their hand between [his] buttox." [*Id.*] According to Sublett, by the time he had the soap washed out of his face and turned around, he could not see who had assaulted him. [*Id.*] Sublett stated that he also filed a grievance regarding this incident. [*Id.*] Sublett also claims that he sent Warden Randy White a letter explaining his "concerns about the sexual rapes that occur in KSP shower house." [*Id.*] Sublett claims that, as a result, Warden White sent Sgt. Mitchell to speak with Sublett. [*Id.*] Sublett states that he told Sgt. Mitchell that he feared he would be sexually assaulted if he continued to shower in that shower house. [*Id.*] Sublett also alleges that he told another individual, Bruce VonDwingelo, of "the threat given to [him] by sexual predator showering in KSP shower house." [*Id.*]

4

Based on all of the above factual allegations, Sublett brings First Amendment retaliation and Eighth Amendment failure-to-protect claims. [*See* DN 1; DN 6-1.] Upon initial review of the complaint and supplemental complaint, the Court allowed Plaintiff's First Amendment retaliation claims to proceed against Kentucky State Penitentiary (KSP) personnel Corrections Officers George Henson and Michele Webber and Sgt. Charles D. Crick in their individual capacities. Upon initial review, the Court also allowed Plaintiff's failure-to-protect claims to proceed against KSP Warden Randy White and Unit Administrator Bruce VonDwingelo in their individual capacities. [*See* DN 20; DN 54.]

There are currently several motions pending before the Court. Defendants filed a motion for summary judgment, [DN 44.] Sublett, in turn, has filed two motions to compel, a motion for sanctions, a motion for the Court to defer consideration of Defendants' motion for summary judgment, a motion to file a response to Defendants' motion for summary judgment once the court rules on Defendants' motion for extension of time, a motion to enforce sanctions, and another motion for sanctions and for default judgment. [DN 42; DN 46; DN 47; DN 49; DN 53; DN 65; DN 66.] The Court will address each motion below.

DISCUSSION

**(1) Motions to Compel [DN 42; DN 46]**

Sublett has filed two motions to compel. First, he moves to compel Defendants to respond to various discovery requests he contends they have ignored. [DN 42.] In response, Defendants state that they "mailed copies of their discovery responses to the Plaintiff on September 21, 2017. Those documents have also not been returned as undeliverable. However, counsel for the Defendants is willing to provide Plaintiff with a second, courtesy copy, of the discovery responses and hereby certifies that such will be included with the service of this

Response." [DN 45 at 1.] Accordingly, the Court will deny Sublett's first motion to compel Defendants to respond to his discovery requests, [DN 42], as moot.

Second, Sublett again moves to compel discovery, this time arguing that Defendants responded to his discovery requests in a "half-hearted and perfunctory" manner and with "improper objection[s]." [DN 46 at 4.] Accordingly, he "moves to compel responded [sic] to interrogatories served on defendants and production of documents." [*Id.*]

Sublett specifically identifies two objections he has to the adequacy of Defendant Warden Randy White's discovery responses. First, in response to a request for admission "[t]hat convicted serial rapist[s] and PREA perpetrators and victims of PREA complaint[s] shower together in KSP shower house," Warden White responded "I am without information sufficient to form a belief as to the truth of this Request and on that basis deny the request." [*Id.* at 5.]

Next, Sublett objects to Warden White's responses to Sublett's requests to produce: 1) "Any and all disciplinary charge[s] of inappropriate sexual activity in KSP shower house from January, February, and March 2016 on any and all inmates house[d] at KSP," 2) "Sexual abuse incident review report form [sic] the PREA investigation from sexual assault on 2/8/2016 to March of 2017 in KSP shower," 3) "All inmates with sexual assault, rape, inmate resident time cards from January 2016–March 2017 currently housed at KSP," and 4) "Any and all Prison Rape investigation on sexual activity in KSP shower house." [*Id.* at 6.] In response to each request, Warden White stated "[i]n my individual capacity I do not have possession, custody or control of any document responsive to his request." [*Id.*]

In his motion to compel, Sublett argues that, in Defendants' motion for summary judgment, they "argue Sublett cannot produce and of the above document[s] to prove his" claims, when they have denied him the very documents he seeks to prove those claims. [*Id.*]

6

Finding certain of Sublett's arguments to be meritorious, the Court issued an Order directing Defendants George Henson, Bruce VonDwingelo, Randy White, Charles Crick, Michele Weber, and Seth Mitchell to respond to Sublett's motion to compel and motion for sanctions. [DN 60.] In that Order, the Court specifically:

> advise[d] Defendants to bear in mind when responding that it has previously recognized "that prison officials who were sued in their individual capacities but employed by the department of corrections can generally obtain documents from the department of corrections by requesting them and that they, therefore, *have constructive control over the requested documents and must produce them.*" *Belden v. Jordan*, No. 3:16CV-P511-TBR, 2017 WL 3485006, at *2 (W.D. Ky. Aug. 14, 2017) (Russell, J.) (emphasis added) (citing *Wick v. Angelea*, No. 2:09-CV- 1027-GEB-EFB, 2013 WL 4432394, at *3 (E.D. Cal. Aug. 16, 2013)).

[*Id.*] Defendants filed a response in which they make two primary arguments. First, Defendants argue that, because Sublett "has not made any effort to confer with counsel for the Defendants regarding the sufficiency of the Defendants discovery responses," his motion for sanctions is not proper. [DN 63 at 1–2.] Specifically, Defendants refer to the provision of Federal Rule of Civil Procedure 37 which states that a motion for "an order compelling disclosure or discovery . . . must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). However because Sublett is proceeding *pro se* and *in forma pauperis* in this action, the Court does not believe that he can be expected to personally confer with Defendants' counsel to try to resolve any discovery disputes. Accordingly, the Court will not deny Sublett's motion to compel on this basis.

Next, Defendants argue that Warden White's responses were adequate. With regard to Warden White's claim that he is "without information sufficient to form a belief as to the truth" of Sublett's request for admission "[t]hat convicted serial rapist and PREA perpetrators and

7

victims of PREA complaint shower together in KSP Shower House," Defendants argue that White's response was adequate because:

> [t]he information required to answer this Request was not "readily obtainable" because Kentucky law does not contain a definition of a "convicted serial rapist." Therefore, it is not known what, if any, individuals would be considered a convicted serial rapist. Additionally, although information regarding which inmates have committed PREA violations and have been the victim of a PREA violation may be readily available, information regarding whether or not those individuals have ever, during the course of their entire incarceration at the Kentucky State Penitentiary, been in the shower at the same time is not information that is readily available.

[DN 63 at 2–3.] The Court finds this argument reasonable and therefore will deny Sublett's motion to compel as to this request for admission.

With regard to Sublett's requests for production of documents, as the Court noted above, Sublett requests four categories of documents: 1) "Any and all disciplinary charge[s] of inappropriate sexual activity in KSP shower house from January, February, and March 2016 on any and all inmates house[d] at KSP," 2) "Sexual abuse incident review report form [sic] the PREA investigation from sexual assault on 2/8/2016 to March of 2017 in KSP shower," 3) "All inmates with sexual assault, rape, inmate resident time cards from January 2016–March 2017 currently housed at KSP," and 4) "Any and all Prison Rape investigation on sexual activity in KSP shower house." [DN 46 at 6.]

Despite the admonition the Court gave in its Order directing Defendants to respond to Sublett's motion to compel, Defendants argue in their response that "Defendant White, in his individual capacity, does not and never had possession, custody, or control of the requested documents or materials." [DN 63.] The Court finds this argument to be unpersuasive. As the Court explained in a recent opinion:

> Rule 34(a) of the Federal Rules of Civil Procedure requires the production of requested documents that are in the possession, custody, or control of the party

> upon whom the request is served. Under Rule 34, "control" means "the legal right to obtain the documents requested upon demand" and is broadly construed. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *accord Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995); *Gen. Envtl. Sci. Corp. v. Horsfall*, 136 F.R.D. 130, 133 (N.D. Ohio 1991). Indeed, "courts have also interpreted Rule 34 to require production if the party has the practical ability to obtain the documents from another, *irrespective of his legal entitlement.*" *In re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 530 (S.D.N.Y. 1996) (internal quotation omitted) (emphasis added).
>
> Defendant claims that he was sued in his individual capacity and is no longer employed by the KDOC. Courts have held that prison officials who were sued in their individual capacities but employed by the department of corrections can generally obtain documents from the department of corrections by requesting them and that they, therefore, have constructive control over the requested documents and must produce them. *See, e.g., Wick v. Angelea*, No. 2:09-CV-1027-GEB-EFB, 2013 WL 4432394, at *3 (E.D. Cal. Aug. 16, 2013).

*Belden v. Jordan*, No. 3:16CV-P511-TBR, 2017 WL 3485006, at *1–2 (W.D. Ky. Aug. 14, 2017). Here, White's *only* argument is that, because he was sued in his individual rather than official capacity, he does not have custody or control over the requested documents as an *individual*. Based on the above reasoning, the Court disagrees.

Defendants make no other argument in their response to Sublett's motion to compel other than the individual capacity argument. Accordingly, the Court will perform its own evaluation of the breadth of Sublett's requests for documents.

First, with regard to Sublett's request for "[a]ny and all disciplinary charge[s] of inappropriate sexual activity in KSP shower house from January, February, and March 2016 on any and all inmates house[d] at KSP," the Court finds that this request is overly broad because the term "inappropriate sexual activity" encompasses more than "sexual assault," which Sublett alleges in this case. Accordingly, the Court will deny Sublett's motion to compel as to this request for production.

Second, with regard to Sublett's request for "[s]exual abuse incident review report form [sic] the PREA investigation from sexual assault [from] 2/8/2016 to March of 2017 in KSP shower," the Court finds this request to be reasonable and properly tailored to the scope of Sublett's allegations in this case. Accordingly, the Court will grant Sublett's motion to compel the production of these records.

Third, with regard to Sublett's request for records of "[a]ll inmates with sexual assault, rape, inmate resident time cards from January 2016–March 2017 currently housed at KSP," the Court agrees that this information is pertinent to Sublett's claims. Accordingly, the Court will grant Sublett's motion to compel the production of these records.

Fourth, with regard to Sublett's request for records of "[a]ny and all Prison Rape investigation on sexual activity in KSP shower house," the Court finds that this request, with a few modifications, is reasonable. Specifically, the Court believes that, to reasonably tailor this request, the timeframe for such PREA investigations should be limited to January 2016 to March 2017, the timeframe in which Sublett narrowed his prior requests, and the term "sexual activity" should be changed to "sexual assault." With these modifications, the Court will grant Sublett's motion to compel the production of these records.

For confidentiality purposes, the Court finds that Defendants should provide Sublett with *redacted* copies of all of the records the Court orders them to disclose by removing any names or other personally identifying information of inmates. Defendants shall file unredacted copies with the Court under seal, however.

> **(2) Motion for Summary Judgment, Motion to Defer Consideration of Defendants' Motion for Summary Judgment, and Motion to File a Response to Defendants' Motion for Summary Judgment Once the Court Rules on Defendant's Motion for Extension of Time [DN 44; DN 47; DN 53]**

Because Sublett filed motions to compel discovery, he also filed a motion requesting that the Court defer consideration of Defendants' motion for summary judgment pending the resolution of discovery issues. [DN 47.] Because, as the Court explained above, it is partially granting Sublett's motion to compel, the Court agrees that it must defer deciding Defendants' motion for summary judgment until Sublett receives the discovery from Defendants and has an adequate opportunity to respond. Accordingly, at this time, the Court will deny Defendants' motion for summary with leave to refile after the completion of discovery. Accordingly, Sublett's motion to defer ruling on that motion is moot.

**(3) Motion for Sanctions [DN 49] and Motion to Enforce Sanctions [DN 65]**

Sublett filed a motion for sanctions against Defendants, alleging that Defendants' counsel continuously failed to serve the requested discovery until after the time for filing dispositive motions. After Defendants' filed their response to Sublett's motions to compel, [DN 63], Sublett filed a motion to enforce sanctions, arguing that Defendants' response was inadequate and that Sublett has still been deprived of discovery documents to which he is entitled. [DN 65.] Sublett also filed a "motion to [e]nforce sanction[s] against Defendants via no dispositive motion as well as a default judgment against stated defendants." [DN 66.] Though the Court agrees that Sublett is entitled to discovery as explained in detail above, the Court does not agree that sanctions, including a default judgment, are warranted at this time. However, should Defendants continue to withhold the documents the Court has ordered them to produce, Sublett will be permitted to raise this issue again. At this time, however, the Court will deny Sublett's motions for sanctions and for a default judgment.

CONCLUSION

For the reasons explained in detail above, **IT IS HEREBY ORDERED** as follows:

(1) Sublett's first motion to compel requesting Defendants to respond to his discovery requests, [DN 42], is **DENIED AS MOOT**.

(2) Sublett's second motion to compel requesting Defendants to respond to his request for admission and his requests for production of documents, [DN 46], is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendant White is **ORDERED** to produce to Sublett, by **Friday, August 31, 2018**:

   **(a)** sexual abuse incident review reports from any PREA investigations into sexual assaults from February 8, 2016 to March of 2017 in the KSP shower,

   **(b)** all inmates with sexual assault and rape inmate resident time cards from January 2016 to March 2017 who are currently housed at KSP, and

   **(c)** any and all Prison Rape investigations into sexual assaults in the KSP shower house from January 2016 to March 2017.

   **(d)** The Court **FURTHER ORDERS** that the documents Defendants produce to Sublett **SHALL** have all names and personal identifying information of inmates redacted. However, Defendants **SHALL FILE** unredacted copies of such records with the Court under seal.

(3) Defendants' motion for summary judgment, [DN 44], is **DENIED WITH LEAVE TO REFILE** pending the completion of discovery as ordered herein.

(4) Sublett's motions to defer consideration of defendants' motion for summary judgment, [DN 47], and to file a response to defendants' motion for summary judgment once the court rules on defendant's motion for extension of time, [DN 53], are **DENIED AS MOOT** since the Court is denying Defendants' motion for summary judgment with leave to refile. Sublett will certainly have an opportunity to respond to Defendants' renewed motion for summary judgment after it is filed.

(5) Sublett's motion for sanctions, [DN 49], motion to enforce sanctions, [DN 65], and motion to enforce sanctions and for default judgment, [DN 66], are **DENIED**.

Date:

cc:     Counsel

**Damien A. Sublett**
134575
LITTLE SANDY CORRECTIONAL COMPLEX
505 Prison Connector
Sandy Hook, KY 41171
PRO SE