**DAMIEN A. SUBLETT**                                                                      **PLAINTIFF**

**V.**

**HENSON,** *et al.*                                                                          **DEFENDANTS**


### MEMORANDUM OPINION


This matter is before the Court upon a motion (the "Motion") by the Defendants, Charles D. Crick, George Henson, Seth Mitchell, Bruce VonDwingelo, Webber, and Randy White, for sanctions against the Plaintiff, Damien A. Sublett. (DN 95). Sublett has responded to the Motion. (DN 102). Sublett has also filed a supplement to his Response. (DN 104). The Court held an evidentiary hearing in this matter on February 10, 2020. At the hearing, Defendants presented testimony from several witnesses and introduced documents into evidence. Plaintiff did not present his own witnesses or documents at the hearing but did cross-examine the Defendants' witnesses and presented a closing argument. Based on the totality of the evidence on the record and being otherwise sufficiently advised, the Defendants' Motion for Sanctions is **GRANTED.**


### Background


The Underlying Claims


This action arises out of incidents that allegedly occurred while Sublett was incarcerated at the Kentucky State Penitentiary ("KSP"). This Court conducted an initial screening pursuant

to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). The Court thereby allowed the following claims to proceed: (1) First Amendment retaliation against Defendant George Henson for issuing Plaintiff a Disciplinary Report in retaliation for a previous lawsuit Plaintiff had filed against other employees at KSP; (2) First Amendment retaliation against Defendant Charles Crick for issuing Plaintiff a Disciplinary Report in retaliation for filing a grievance against Defendant Michelle Weber; (3) First Amendment retaliation against Defendant Michelle Weber for closing Plaintiff's arm in the cell door in retaliation for a previous lawsuit Plaintiff had filed against other employees at KSP; and (4) Eighth Amendment claim against Defendant Randy White, Bruce VonDwingelo, and Seth Mitchell for failing to protect the Plaintiff from being assaulted in the shower.

According to Sublett, on February 2, 2015, he mailed Defendant George Henson, a correctional officer, a memorandum notifying him of his lawsuit against nurse Simmons. (DN 1 at 6). On the morning of February 7, 2016, Henson was escorting a different nurse, Nurse Smith, along the walk of Seven Cell House A to distribute medicine to inmates. *Id.* Sublett refused to take his medication that morning, and alleges that, in response, Henson stated "Get up and take your medication. This nurse out here now is not the Nurse Simmons who you filed the lawsuit on." *Id.* Sublett continued to refuse to take his medication. *Id.* After this incident, Henson filed a disciplinary report on Sublett for using disrespectful language. *Id.* According to Henson's report, Sublett stated "Those aren't my meds," and when Henson said "hold on while I check," "Sublett became loud and disrespectful stating 'shut my fucking tray slot.' Inmate Sublett also said 'Do your fucking job as security and stop trying to be medical.'" (DN 44-6 at 1). The Adjustment Committee found Sublett guilty on February 10, 2016 and was issued a penalty of fifteen days of

good time loss. (DN 1-3 at 26). Sublett contends, however, that Henson's allegations were false and meant to retaliate agains Sublett for filing a lawsuit against Nurse Simmons.

For his second retaliation claim, Sublett alleges a separate incident in his supplemental complaint. (DN 6-1). Sublett alleges that on December 21, 2016, he was injured by his cell door, which is electronically operated. *Id.* at 1. According to Sublett, while attempting to exit his cell with the cell door open, he got about halfway through the door when it quickly closed, trapping him in the door. *Id.* Sublett states that the door then opened again and he attempted to exit, but the door quickly closed on his right arm. *Id.* Sublett allegedly called for help and the walk officer, Officer Johnson, let him out. *Id.* Once. Sublett exited his cell, he told Officer Brindle that he was injured, and she told him to "go to medical." *Id.* Sublett asserts that control officer Michele Webber laughed and mocked him by holding her arm. *Id.* After leaving medical, where Sublett was told he had minor swelling and was given ibuprofen, he was called into Sgt. Crick's office. *Id.* There, Sublett told Sgt. Crick that he planned to file a grievance against control officer Webber for intentionally closing the cell door on his arm. *Id.* Sublett contends that Sgt. Crick told him that he "would not be filing any grievance because he would be issuing  [Sublett] a disciplinary report which would stop [his] grievance." *Id.* Sgt. Crick allegedly told  Sublett that, due to the upcoming holidays, his grievance would not reach the administration until after the holidays. *Id.* at 1-2.

Sublett further alleges that, On December 31, 2016, he filed a grievance against c/o Webber for shutting the cell door on his arm. *Id.* at 2. In response, Sublett received a Grievance Rejection Notice informing him that the issue in his grievance was "non-greivable" and that it had to instead be addressed through the Adjustment Committee. *Id.* According to Sublett, he was also retaliated against for filing a grievance against c/o Webber because, on December 31, 2016,

Sgt. Crick "issued Sublett a false disciplinary report charge" for "lying to an employee." *Id.* According to Sgt. Crick, "upon review of camera footage . . . Sublett did not get his arm shut in his cell door." *Id.* Sublett went before the Adjustment Committee on January 30, 2017 and, after calling c/o Johnson as a witness, who stated he observed Sublett get his arm caught, the disciplinary report was dismissed. *Id.*

Next, Sublett alleges that, on January 27, 2017, he was walking with another inmate, Kenderick Ellison, in the yard at KSP when c/o Webber stopped him and asked if he was still hurt. *Id.* Sublett alleges that c/o Webber patted Ellison down but stated that she would not pat Sublett down because he would file a PREA complaint or a lawsuit like he did against Ms. Sheets. *Id.* Sublett says he told c/o Webber that "it had nothing to do with her," and in response c/o Webber stated that she wished she had broken his arm in the cell door so that he could not file any more grievances. *Id.* at 3.

Finally, regarding his failure to protect claim, Sublett alleges that, on January 1, 2017, he "was forced to shower with inmates who have a document[ed] history of raping inmate[s] in KSP shower house." (DN 6-1 at 3). Sublett states that he filed a grievance about this issue on January 3, 2017 informing several prison officials that inmates "who are documented registered sexual serial rapist[s] and inmate[s] who have been charged and convicted of rape in KSP shower house via substantial PRE's and inmate[s] who have received disciplinary reports for inappropriate sexual behavior" all "pose a risk to Sublett being sexually assaulted because of the shower house required inmate[s] to literally shower no more than five inches from one another." *Id.* According to Sublett, he was again forced to shower in these conditions on January 27, 2017 and another "inmate informed [him] to get up front of the shower house or get fucked." *Id.* at 4. Sublett states that he filed a grievance regarding this incident. *Id.*

Sublett alleges that he was again forced to shower under these conditions on February 3, 2017, and that while his face was covered with soap, an unknown inmate "smack[ed] [him] on [his] buttox [while] slightly taking their hand between [his] buttox." *Id.* Sublett alleges that he filed a grievance regarding the shower assault incident. *Id.* Sublett also claims that he sent Warden Randy White a letter explaining his "concerns about the sexual rapes that occur in KSP shower house." *Id.* Sublett claims that Warden White sent Sgt. Mitchell to speak with him and that he told Sgt. Mitchell that he feared he would be sexually assaulted if he continued to shower in that shower house. *Id.* Sublett also alleges that he told another individual, Bruce VonDwingelo, of "the threat given to [him] by sexual predator showering in KSP shower house." *Id.*

The Motion for Sanctions

Defendants filed their first motion for summary judgment on December 8, 2017. (DN 44). On August 16, 2018, the Court dismissed the motion with leave to refile to allow additional time for discovery. (DN 68). Defendants' second motion for summary judgment is now pending. (DN 85). Upon taking the second summary judgment motion under consideration, the Court discovered inconsistencies within documents filed by Sublett. The Court noticed that Sublett had submitted multiple exhibits purporting to be authentic copies of grievance documents. But, when these documents were compared side-by-side, there were numerous inconsistencies between them. To clarify the presence of these discrepancies, the Court ordered that

> [t]he Defendants shall obtain certified copies of these documents from Kentucky State Penitentiary and file them with the Court. Defendants are encouraged, but not required, to file any other certified documents regarding the resolution of this alleged Grievance that may be available. . . . The Court deems it necessary and in the interest of justice for these documents to be made available for review and for a Defendant either to swear to the authenticity of the provided documents or to

otherwise provide evidence that the documents the Defendants provide are authentic.

(DN 93). On November 15, 2019, Defendants complied with this Order and explained "[b]ased on the attached documentation, it is obvious that the documents Plaintiff Sublett attached to [his] response to Defendants' Motion for Summary Judgement (DN 89-1, pages 1-2, Page ID#: 973-978) were altered by the Plaintiff." (DN 94). Three days later, Defendants filed the Motion for Sanctions that is the subject of this Memorandum Opinion and accompanying Order & Judgement. (DN 95). In the Motion for Sanctions, Defendants allege that Sublett forged, altered, or otherwise misrepresented documents to the Court under oath. As sanctions, the Defendants request the Court to dismiss Sublett's claims with prejudice and to enter an order barring Sublett from proceeding in future cases in federal court without prepayment of filing fees. Sublett denies these allegations, accuses Defendants of altering documents, and blames others for the inconsistencies in his documents.

The Court held an evidentiary hearing in this matter on February 10, 2020. At the hearing, Defendants called Roger Mitchell, Josh Patton, Skyla Grief, Dan Smith, and Randy White as witnesses. Defendants also introduced seven exhibits into evidence. Sublett did not call witnesses or introduce exhibits but he did cross examine most of the Defendants' witnesses. At the conclusion of the hearing, the Court instructed the parties that further briefing was unnecessary. At his request, however, the Court heard Sublett's oral argument on the matter.

## Discussion

(I)     <u>Mr. Sublett forged/altered grievance documents and misrepresented their authenticity to the Court.</u>

Sublett submitted an exhibit to the Court purporting to contain authentic grievance documents in satisfaction of the Prison Litigation Reform Act ("PLRA") exhaustion requirements pertaining to his shower assault claims. (DN 89-1, PageID #973). In this document ("Plaintiff's 16-12-134-G" or "Sublett's 16-12-134-G"), the "Brief Statement of the Problem" states:

> On December 1, 2017 I request to shower on the walk, this request was made to Unit administrator Vondwingelo, he told me not on my off days, that I had to shower in KSP Shower house. Told Mr. Vondwingelo about . . . sexual predators that shower in the . . . shower house and that I've been told by Tommy Wilson that the Shower house is . . . F—(sex) and that if I come in then some body going to take my anus. Vondwinglo told me security staff is assigned to the Shower house. I told Vondwingelo that I Fear for my Saftey.

(DN 89-1 at 2, PageID #974). Upon reviewing Sublett's grievance documents, the Court identified several inconsistencies. Pursuant to this Court's Order, Defendants submitted their own documents purporting to be Grievance # 16-12-134-G ("Defendants' 16-12-134-G"). In Defendants' 16-12-134-G, the Brief Statement of the problem states:

> On 12-20-16 Inmate ("I/M") Damien A. Sublett was walking to his cell assignment 51A18. . . . While Mr. Sublett was entering . . . walk office Ms. Brend AKA Ms. "B" informed Mr. Sublett that he would not being working for her because Sublett has a problem filing law suit and PREAs on female officer and if Sublett filed a grievance on her or spoke with any of her supervisor she would have Sublett lock'd up and she would issue Sublett a write up. Further, Ms. "B" informed Sublett that as of Today 12-20-16 she would erase Sublett completely from his Job and cell assignment. On 12-21-16 the walk officer came to Sublett cell and informed Sublett that He had been erased from the book's as an inmate house in 54h1A18, the officer further, stated, "they didn't even have you in this cell or on this floor."

(DN 94-1 at 3-4, PageID # 1258-59). Therefore, Plaintiff's 16-12-134-G and Defendants' 16-12-134-G are concerned with entirely different subjects. Furthermore, the Court identified numerous other differences between the parties' respective documents. For example, Plaintiff's document does not have a "Warden Stamp" noting when the grievance was received at the bottom right

hand of the "Inmate Grievance Information Form." (PageID # 973). Furthermore, the "UNIT/HOUSING ASSIGNMENT" field is different on the parties' respective documents. (PageID # 973; PageID # 1257). On Sublett's documents, the "Date Filed" and "Grievance Number" sections are handwritten. (PageID # 973). These fields are partially typed on the Defendants' documents. On, February 10, 2020, the Court held an evidentiary hearing to resolve these discrepancies and further clarify the authenticity of the documents.

Based on evidence presented by Defendants at the hearing, the Court finds that Sublett forged and altered grievance documents and submitted them to the Court. Credible hearing testimony establishes that Sublett's documents do not match the grievance documents that are on file at KSP. (Transcript, DN 117 at 16-18; *Id.* at 49). Testimony presented at the hearing also establishes that the Defendants' documents do match the grievance documents that are on file at KSP. *Id.* at 21, 42.

The most persuasive evidence of Sublett's forgery is the testimony of Skyla Grief. Grief is the Deputy Warden of Programs at KSP. *Id.* at 53. Grief's duties include supervising "all inmate transfers, housing assignments, programming, inmate records, classification, grievance, legal office . . . and filling in for the warden." *Id*. Sublett's version of 16-12-134-G is signed by a Grievance Aid named "Corey Meeks # 1234837." This signature is dated "12-1-16." Grief testified that there was not an inmate with the last name Meeks in December of 2016. (Transcript, DN 117 at 58-59). In fact, Grief testified that no inmate with that last name existed in any institution within the Department of Corrections. *Id.* at 59. Furthermore, Grief testified that the signature on Sublett's document does not exhibit a legitimate inmate number "[b]ecause it has an additional digit" and the Department of Corrections "Only operates with six-number digits." *Id.* at 60. The number on Sublett's document contains seven digits. Finally, Grief

testified that the staff signature on the same document, which appears to be signed by "Yolanda" or "Yinda" Green is unauthentic because there were no KSP employees with the last name "Green" in December of 2016. *Id.*

Sublett neither cross-examined nor offered his own evidence at the hearing to counter Grief's testimony. The Court finds Grief's testimony to be credible. Therefore, the evidence on the record establishes that Sublett submitted a document purporting to be an authentic Inmate Grievance Form that contained the signature of a grievance aid who was not an inmate anywhere within the Department of Corrections and who had an illegitimate inmate number. The evidence also establishes that this same document contains the staff signature of an individual who did not exist as an employee at KSP. The Plaintiff did not dispute any of these facts at the hearing. Sublett has conjured up fictious inmates and prison officials to "sign" his documents and he has sworn to their authenticity. This page of Sublett's exhibit (DN 89-1, PageID # 974)—standing alone—is undisputed proof that Sublett has submitted forged or altered documents and misrepresented their authenticity to the Court. But this is far from the only evidence that Sublett forged documents in this case.

The grievance number itself evinces Sublett's attempt to deceive the Court. "16-12-134" is not an arbitrary series of numbers. Each digit represents data about the grievance. The "16" means the grievance was filed in 2016. (Transcript, DN 117 at 72). The "12" means it was filed in December. *Id.* And the "134" means that it was the 134th grievance filed that month. *Id.* Sublett's document purports to be filed on the first day of December 2016.[1] Therefore, Sublett asserts that at least 134 grievances were filed on 12/1/2016. At the hearing, Grievance Coordinator Dan Smith testified that this volume of grievances is inconceivable and that he could

---

[1] This date is also inconsistent with the date referenced in the brief statement of the problem—12/1/17.

not recall ever having more than forty grievances filed in a single day during his six years of experience with the grievance process. (Transcript, DN 117 at 73).

Finally, Warden White testified that Sublett's documents were unauthentic. The Court finds White's testimony to be credible and persuasive. White testified that Sublett's documents contained a forgery of his signature. (Transcript, DN 117 at 101). Warden White also testified that Sublett's documents contained incorrect font, spacing, and grammar. *Id.* Ultimately, Warden White clearly testified that he did not create the document (DN 89-1, PageID # 977) that Sublett submitted to the Court. *Id.*

These facts conclusively establish that Sublett submitted a forged or altered version of Grievance # 16-12-134-G. And this act, without more, is enough to merit sanctions. But evidence on the record also establishes that Sublett submitted other forged documents. For example, the Plaintiff submitted a forged or altered document purporting to be Grievance # 18-03-008. (DN 89, PageID # 956). Like with Plaintiff's 16-12-134-G document, the number "18-03-008" does not align with the filing date contained in Plaintiff's document. A grievance with the number "18-03-134" would necessarily be filed in March of 2018. The document that Sublett submitted was signed in March of 2017. (DN 89-2, PageID # 1011). Furthermore, the Defendants submitted the authentic Grievance 18-03-008 with the Court. This grievance was filed by a different inmate. (DN 97). At the evidentiary hearing, Roger Mitchell testified that Defendants' document was authentic. (Transcript, DN 117 at 12). The Court finds Mitchell's testimony to be credible and is persuaded that Sublett submitted an altered or forged document and misrepresented it as being Grievance 18-03-008.

(II)  <u>Dismissal of all claims and a permanent injunction are the most appropriate sanctions in this action.</u>

The Court finds it appropriate to impose sanctions against Sublett pursuant to its inherent authority. The Court may exercise this authority regardless of whether procedural rules are also available to sanction the same conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct"); *Metz v. Unizan Bank*, 655 F.3d 485, 490 (6th Cir. 2011). "[C]ourts have broad discretion under their inherent power to fashion putative sanctions." *Williamson v. Recovery Ltd. Partnership*, 826 F.3d 297, 306 (6th Cir. 2016).

Sublett is a prolific filer. He has a history of filing frivolous actions in the federal courts. Sublett often has multiple civil suits filed against prison officials simultaneously. These actions often involve a series of complaints, supplemental complaints, and amended complaints whereby Sublett changes the parties and claims that are before the court. His litigation often begins with Sublett exposing himself to female prison officials and support staff. The Court has warned Sublett on multiple occasions that it may be forced to take protective actions in the face of future frivolous or vexation litigation. *See, e.g.*, *Sublett v. McAlister*, No. 5:16-CV-00138-TBR, 2018 WL 6817018 (W.D. Ky. 2018). The Court has also issued strikes against Sublett pursuant to the PLRA "Three Strikes" rule. *Id.*

Other Courts have also warned Sublett that submitting forged or altered documents may result in sanctions. In *Sublett v. Howard*, No. 0:18-084-HRW, 2019 WL 4601837 (E.D. Ky. Sept. 23, 2019), the court identified several suspicious documents filed by Sublett and declared that it held "very serious concerns regarding Sublett's submission of documentation to the Court

in support of his response." As in this case, the *Howard* court identified that Sublett's documents contained inconsistent dates and appeared to be altered or forged. *Id.* at *6. The court also noted that the signatures and housing assignments on Sublett's documents were incorrect. *Id.* at 21. Although the *Howard* court declined to sanction Sublett, it noted that it had the authority to do so and "[e]ven a court's 'special solicitude' towards *pro se* litigants 'does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Id.* at *8 (quoting *Pandozy v. Segan*, 518 F. Supp. 2d 550, 558 (S.D.N.Y. 2007)). Furthermore, the court warned:

> Any person proceeding *pro se* who repeatedly files frivolous motions or other pleadings, and certainly any person who submits pleadings in bad faith or for an improper purpose, abuses the right to represent himself without counsel and the privilege of proceeding without payment of the filing fee and imposes a heavy burden upon the resources of the court at the expense of other litigants with potentially meritorious claims. Sublett is advised that the Court may impose sanctions necessary and appropriate to deter such conduct . . . including the imposition of monetary sanctions, future filing restrictions, and/or holding Sublett in contempt of court. . . . Although the Court declines to do so at this time, Sublett is advised that the Court will not hesitate to revisit this decision if warranted.

*Id.* (citation omitted).

Furthermore, this is not the first time that Sublett has misrepresented key facts to this Court. In *Sublett v. McAlister*, for example, Sublett represented that he had not filed a Prison Rape Elimination Act ("PREA") claim against a prison official and testified that "[he] did not write anything admitting to a PREA." No. 5:16-CV-00138-TBR, 2018 WL 6817018, *1 (W.D. Ky. Dec. 27, 2018). Contrary to Sublett's testimony, the Court found:

> The evidence is all but one sided. Everything, except Sublett's own self-serving statements, suggests that he filed a PREA claim—not a verbal grievance. Sublett complained to a PREA investigator, Grimes testifies in his affidavit that Sublett filed a PREA complaint, the disciplinary investigation resulted in a determination that Sublett filed a PREA complaint, and, most importantly, Sublett has twice admitted to filing the PREA complaint—once [in] a sworn statement made to this

Court. In October of 2016, in appealing his prison disciplinary proceedings, [Sublett] states unequivocally that "[o]n or about 9/13/16 at approx.: 1:30 p.m. [,] I Damien Sublet filed a Prison Rape Elimination Act ('PREA')." (R. 16, Def.'s Resp. to Mot. To Supplement Compl., Ex. 4). Then, in August of 2017, in a verified complained filed with this Court in *Sublett v. Linda Green*, 5:17-CV-00116-TBR, Sublett states—under penalty of perjury—as follows:

> The third complaint to filed by Sublett was against W.K.C.C. Correctional Officer Kerriann Hamby unlike the complaint filed against McAlister pursuant to C.P.P. 14.6, this complaint against c/o Hamby was filed pursuant C.P.P. 14.7 Prison Rape Elimination Act ("PREA") in which Sublett alleged c/o Hamby improperly positioned herself to view inside the men's restroom in violation of policy and the 4th Amendment Bodily privacy right.

*Id.* at * 2. Because Sublett had misrepresented this key fact and filed a frivolous civil action while proceeding *in forma pauperis*, the Court issued a strike under the PLRA. *Id.* at 3. The Court also warned Sublett as follows:

> The Court also takes this opportunity to warn Sublett that it has a duty to protect the proper and expeditious administration of justice. *See Urban v. United Nations*, 248 U.S. App. D.C. 64, 768 F.2d 1497, 1500 (D.C. Cir. 1985). Given the repetitive litigation by Sublett—and the fact that the litigation often starts with Sublett exposing himself to female prison officials and support staff—*the Court warns Sublett that it may be forced to take protective actions in the face of future frivolous or vexatious litigation.*

*Id.* (emphasis added).

Because of Sublett's history of frivolous litigation and misrepresentation of facts to the Court, it is now necessary to take protective actions to protect the proper and expeditious administration of justice. The right to proceed *in forma pauperis* is privilege, not a right. *Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998); *Weaver v. Toombs*, 948 F.2d 1004, 1008 (6th Cir. 1991); *Amadasu v. Northwest/KLM Airlines*, No. 1:09-CV-030, 2009 WL 10709200, *1 (S.D. Ohio, Mar. 11, 2009). And federal courts have the authority to revoke or deny this privilege if a litigant abuses the privilege of proceeding *in forma pauperis* by filing frivolous, harassing, or duplicative lawsuits. *See In re Macdonald*, 489 U.S. 180, 184-85 (1989) (per curiam); *Maxberry*

*v. S.E.C.*, 879 F.2d 222, 224 (6th Cir. 1989) (per curiam); *Amadasu*, 2009 WL 10709200, at *1.

"[O]ne acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Bradley v. Wallrad*, No. 1:06-CV-246, 2006 WL 1133220, *1 n. 2 (S.D. Ohio Apr. 27, 2006) (quotation omitted).

"Monetary sanctions are generally not as effective against a *pro se* plaintiff proceeding as a *pauper*." *Haskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011). In this case, monetary sanctions would be insufficient to deter Sublett from forging or altering documents or otherwise defrauding the Court in the future. And the Court is concerned that Sublett will try to forge or alter documents again because it appears likely that this is not the first case in which Sublett has done so. Indeed, it appears to be a pattern of Sublett's behavior. Sublett's misconduct in this case is serious. To deter him from committing similar fraudulent acts in the future, the Court will dismiss his claims in this action with prejudice and will require Sublett to pay his own filing fees up front before initiating any future litigation in this Court. Although this sanction is severe, it is appropriate in rare cases of misconduct as reprehensible as Sublett's. In a similar case, the Southern District of Ohio explained the appropriateness of prospective measures such as a permanent injunction as follows:

> When a litigant abuses the privilege to proceed *in forma pauperis* by repeatedly filing frivolous lawsuits or engaging in bad faith conduct, sanctions are appropriate. Federal courts have the inherent power to impose appropriate sanctions, including restrictions on future access to the judicial system, to deter future frivolous, harassing or duplicative lawsuits. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 43-45 (1991); *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987). *See also Iwachiw v. N.Y. State Dept. of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005); *Cauthon v. Rogers*, 116 F.3d 1334, 1337 (10th Cir. 1997). *Accord First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 513 (6th Cir. 2002) (courts possess inherent authority to sanction bad-faith conduct without regard to whether such conduct could be sanctioned under other applicable rules or statutes). While this Court cannot absolutely foreclose an individual from initiating an action or pursuing an appeal in federal court, *Ortman*

> *v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996), the Court may impose prefiling restrictions on an individual with a history of repetitive or vexatious litigation. *Feathers v. Chevron U.S.A., Inc.,* 141 F.3d 264, 269 (6th Cir. 1998); *Ortman*, 99 F.3d at 811. A district court may properly require prolific litigators to obtain leave of court before accepting any further complaints for filing, *see Filipas*, 835 F.2d at 1146, and may deny a vexatious litigant permission to proceed *in forma pauperis. See, e.g., Reneer v. Sewell*, 975 F.2d 258, 260-61 (6th Cir. 1992). The imposition of these prospective orders has been upheld where a litigant has demonstrated a "history of unsubstantial and vexatious litigation [amounting to] an abuse of the permission granted to him to proceed as a pauper in good faith...." *Maxberry v. SEC*, 879 F.2d 222, 224 (6th Cir. 1989). *See also In re McDonald*, 489 U.S. 180 (1989).

*Amadasu*, 2009 WL 10709200, at *1. As discussed in detail above, Sublett has a history of frivolous, vexatious, and bad faith litigation in the federal courts and he has certainly abused his privilege of proceeding *in forma pauperis*. Sublett's pattern of filing frivolous lawsuits does not serve a legitimate purpose, it wastes the Court's resources, and it wastes the time and resources of the defendants who must defend against the vexatious actions. The substantial volume of his frivolous actions bogs down the Court's resources and delays the resolution of legitimate actions filed by other litigants. In this case, for example, the Court has been forced to move Sublett's trial and hold an evidentiary hearing because of Sublett's submission of forged documents. This alone amounts to several days of Court resources without being any closer to reaching the merits of Sublett's case. Furthermore, Sublett's submission of forged documents in this and other cases is evidence that he acts in bad faith and is an abuse of the judicial process. A permanent injunction prohibiting Sublett from proceeding *in forma pauperis* in any future action filed in this Court and from filing any new complaint or removal petition without prior approval from this Court is appropriate due to Sublett's extremely abusive history of vexatious litigation and bad faith conduct in this and other federal courts. These sanctions do not entirely close the doors of the Court to Sublett but instead ensure that any action he brings will be legitimate and potentially meritorious. Hopefully these sanctions will encourage Sublett to carefully consider the

consequences of his actions and deter him from filing frivolous suits or forged documents in federal courts.

It is also appropriate to dismiss Sublett's claims in this action with prejudice. It is impossible to determine the degree to which Sublett's forged documents have tainted this litigation and to proceed further would be a miscarriage of justice. In general, courts may impose appropriate sanctions, including dismissal or default, against litigants who violate discovery rules and other rules and orders designed to enable judges to control their dockets and manage the flow of litigation." *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (citing *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010)). Sublett's submission of forged documents in this case merits dismissal.

## Conclusion

For the reasons set forth in the Memorandum Opinion above, this action is dismissed with prejudice. Furthermore, the Court imposes a permanent injunction prohibiting Sublett from proceeding *in forma pauperis* in this Court and from filing any new complaint or removal petition without first obtaining approval from the Court. The Court shall issue a corresponding Order & Judgment contemporaneous to this Memorandum Opinion.

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 17, 2020

CC: PRO SE / COUNSEL